**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ASHLEY C. WILLIAMS, Individually; | ) | |
| MICHAEL S. WILLIAMS; Individually; and | ) | |
| ASHLEY and MICHAEL WILLIAMS, | ) | |
| On Behalf of Their Minor Son, | ) | |
| GW, | ) | No. 19-cv-144 |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | **JURY TRIAL DEMANDED** |
| BROOKSTONE STORES, INC. | ) | |
| BROOKSTONE, INC., | ) | |
| BROOKSTONE COMPANY, INC., and | ) | |
| MAXFIELD & OBERTON HOLDINGS, LLC, | ) | |
|  | ) | |
| Defendants. | ) | |

**COMPLAINT AT LAW**

COME NOW Plaintiffs, ASHLEY C. WILLIAMS, Individually, MICHAEL L. WILLIAMS, Individually, and ASHLEY and MICHAEL WILLIAMS, on behalf of their minor son, GW, and file their Complaint at Law for Civil Damages against Defendants, BROOKSTRONE STORES, INC., BROOKSTONE, INC., BROOKSTONE COMPANY, INC., and MAXFIELD & OBERTON HOLDINGS, LLC, and states as follows:

**I.      PARTIES**

1.      Plaintiffs, ASHLEY WILLIAMS, MICHAEL WILLIAMS, and GW (their minor son) are residents of the State of Indiana. Plaintiffs reside at 5287 North Barclay, La Porte, Indiana 46350.

2.      Defendant, BROOKSTONE STORES, INC., is a corporation having its principal place of business in Merrimack, New Hampshire, and is incorporated under the laws of New

1

Hampshire. It has physical store locations from which it sells its wares across the United States, including within the Northern District of Illinois. Brookstone Stores, Inc., may be served with summons and a copy of the Complaint through its registered agent for service, Illinois Corporation Service C., 801 Adlai Stevenson Drive, Springfield, Illinois, 62703.

3.       Defendant, BROOKSTONE COMPANY, INC., is a corporation having its principal place of business in Merrimack, New Hampshire, and is incorporated under the laws of New Hampshire. It has physical store locations from which it sells its wares across the United States, including within the Northern District of Illinois. Brookstone Company, Inc., may be served with summons and a copy of the Complaint through its registered agent for services, Thomas P. Manson, Esq., 1000 Elm Street 20F1, Manchester, New Hampshire 03101. In addition or in the alternative, BROOKSTONE COMPANY, INC., may be served with process through its president, Mr. Stephen Bebis or any other officer of the corporation.

4.       Defendant, BROOKSTONE, INC., is a corporation having its principal place of business in Merrimack, New Hampshire and is incorporated under the laws of Delaware. It is the sole and entire owner of Defendant, BROOKSTONE COMPANY, INC.. It has no business operations aside from owning and operating Defendant, BROOKSTONE COMPANY, INC.. Defendant, BROOKSTONE, INC. may be served with summons and a copy of the Complaint through its registered agent for service, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. In addition or in the alternative, Defendant, BROOKSTONE, INC. may be served with process through its president, Mr. Stephen Bebis or any other officer of the corporation.

5.       Defendant MAXFIELD & OBERTON HOLDINGS, LLC ("M&O LLC") is a Delaware limited liability company that filed a Certificate of Cancellation on December 27,

2

2012. M&O LLC is a foreign limited liability company that has committed a tort, in whole or in part, in the State of Illinois and otherwise has done and was doing business in the State of Illinois and may be served with process of this Court through its registered agent for service of process: Incfile.com, LLC, 9 East Loockerman St., Suite 215, Dover, Delaware 19901.

## II.     JURISDICTION and VENUE

6.     This Court has subject matter jurisdiction over all of Plaintiffs' claims because there is complete diversity of parties and more than $75,000.00 in controversy, pursuant to 28 U.S.C. §1332.

7.     The Plaintiffs are residents of the State of Indiana. Plaintiffs reside at 5287 North Barclay, La Porte, Indiana 46350.

8.     Defendant, BROOKSTONE COMPANY, INC., is incorporated in New Hampshire and has its principal place of business in New Hampshire, and does substantial business in Illinois through its many storefronts.

9.     Defendant, BROOKSTONE STORES, INC., is incorporated in New Hampshire and has its principal place of business in New Hampshire, and does substantial business in Illinois through its many storefronts.

10.     Defendant, BROOKSTONE, INC., is incorporated in Delaware and has its principal place of business in New Hampshire, and does substantial business in Illinois through its many storefronts.

11.     Defendant, M&O LLC was a Delaware limited liability company.

12.     Defendant, M&O LLC's "members" were Craig J. Zucker and Allen Jake Bronstein. Upon information and belief, Craig J. Zucker resides at 184 Kent Ave., Apt. #B 702, Brooklyn, New York 11249 (Kings County). Upon information and belief, Allen Jake Bronstein resides at 712 Maco St., Brooklyn, New York 11233 (Kings County).

13.     Venue is proper in this District because all or a substantial portion of the events and omissions giving rise to Plaintiffs' claims occurred in the Northern District of Illinois, pursuant to 28 U.S.C. §1391(b)(2); namely, the purchase of the "Buckyballs®".

14.     On information and belief, Defendants BROOKSTONE COMPANY, INC. and BROOKSTONE, INC. marketed and sold "Buckyballs®" throughout the Northern District of Illinois, including the units involved in the current action.

## III.     FACTUAL ALLEGATIONS

15.     M&O LLC commenced operations in March 2009 under the leadership of its equal partners Craig J. Zucker and Jake Bronstein, collectively "M&O LLC".

16.     M&O LLC marketed and distributed the Buckyballs® toy product throughout the United States and in 20 foreign countries, including the State of Illinois.

17.     The Buckyballs® product consists of small individual industrial strength spherical magnets that are packaged as an aggregate cubed-shaped mass in different sized containers holding as many as 216 individual spheres approximately 5 millimeters in size.

18.     Buckyballs® were sold in the United States through retailers, such as Defendant, BROOKSTONE COMPANY, INC., and through various internet websites.

19.     Pursuant to Section 19 of the Consumer Product Safety Act (CPSA) it is now illegal "for any person to sell, offer for sale, manufacture, distribute in commerce or import into the United States any Buckyballs or Buckycubes."

20.     M&O LLC's rare earth magnet products (Buckyballs®, Bucky Bigs®, Buckybars®, and Buckycubes®) continue to be available for sale on the internet through the buckyballsstore.com website. Exhibit "1". Upon information and belief, M&O LLC continues to receive funds, and/or otherwise benefit from these sales. Plaintiffs reserve the right to investigate further and assert such sales and receipt of funds/benefits as part of their Causes of Action in this Complaint at Law.

21.     M&O LLC marketed Buckyballs® to children. Buckyballs® were compared to "An Erector Set® that never stops erecting; a Hula-Hoop® you don't look ridiculous playing with; Silly Putty® that isn't silly; cram it all in a jar, turn the fun up to 11, and you've got Buckyballs!". Craig Zucker later stated to the media: "We coulda been Leggo®! We coulda been a Rubik's® Cube!"

22.     M&O LLC also marketed Buckyballs® as an "amazing magnetic toy," encouraging consumers to use them in games, use them to hold items to a refrigerator, and "wear them as jewelry." In a 2009 advertisement video, M&O LLC displayed a consumer using Buckyballs® magnets to simulate a tongue piercing.

23.     The inherent/generic selling characteristic of Buckyballs® is their strong and permanent magnetism. Unlike common magnets which are made of iron alloy, Buckyballs® are made of neodymium, a rare earth metal, hence the name "rare earth" magnet. Rare earth magnets are the strongest type of permanent magnets that can be manufactured.

5

24.     The intense magnetic properties of Buckyballs® are so powerful that, if swallowed, they can pinch and perforate any tissue caught between them. "When two are ingested they have a way of finding one another. When they catch a loop of intestine, the pressure leads to loss of blood supply, tissue rot, perforation and potentially death." Buckyballs® are "[A]n inappropriate use of an industrial strength magnet."

25.     Throughout the time Buckyballs® have been on the market, there have been over a thousand reported incidents of children being hospitalized after swallowing the high-powered magnets, generally, many of which were Buckyballs®, specifically. The following are representative examples of severely injured children who required medical intervention:

a)  **January 2010:** A nine year old boy used Buckyballs® to mimic a tongue piercing and swallowed seven magnets. He was treated in the emergency room.

b)  **September 2010:** A twelve year old girl swallowed two Buckyballs®. She was treated an monitored for infection and damage to her gastrointestinal tract.

c)  **December 2010:** A three year old girl swallowed eight Buckyballs® she found on a refrigerator in her home. The magnets became imbedded in the girls trachea and esophagus, requiring surgical removal after causing intestinal and stomach perforations.

d)  **January 2011:** a four year old boy suffered intestinal perforations after swallowing three Buckyballs® he thought were chocolate candy because they looked like the decorations on his mother's wedding cake.

e)  **January 2012:** A ten year old girl swallowed two Buckyballs® after using them to mimic a tongue piercing. The magnets became imbedded in her large intestine, requiring surgical removal.

f)  **February 2012:** A three year old girl swallowed thirty-seven Buckyballs® that were revealed on X-ray showing the circular chain in her stomach. The 37 magnets snapped the girl's intestines together, tearing three holes into her lower intestine and one hole into her stomach before they could be surgically removed.

g)  **March 2012:** A twelve year old girl was simulating a tongue piercing at school when she swallowed Buckyballs®. She was hospitalized for six days and required two surgeries to remove the balls from her intestines.

6

h) **March 2013:** A six year old girl was rushed to the hospital after ingesting 19 Buckyballs®. She told her mother they looked like candy. After three days of supervision with no movement, doctors performed emergency surgery and discovered the magnets had perforated the girl's small intestine, causing ulcerations in the stomach and leaving two small holes in her bowel.

26.     Although M&O LLC, BROOKSTONE, INC., and BROOKSTONE COMPANY, INC. marketed Buckyballs® for use as a toy by children and/or other age inappropriate individuals, children cannot and could not appreciate the hazard associated with swallowing the intensely powerful industrial magnets.

27.     As a result of the aforementioned events, M&O LLC, BROOKSTONE, INC., and BROOKSTONE COMPANY, INC. knew or reasonably should have known that children similar in age to GW would place the Buckyballs® in their mouth and/our swallow them.

28.     From March 2009 (the date of the first United States sale) to January 2010, the Consumer Product Safety Commission ("CPSC") documented multiple cases of children being severely injured from swallowing Buckyballs®.

29.     In February 2010, the CPSC approached M&O LLC notifying the company that Buckyballs® did not meet the labeling and warning requirement for such products. Original Buckyballs® were sold in a glass jar with a product identification label, but no warning. M&O LLC and its owners originally cooperated by changing the packing, warnings, and labeling on Buckyballs®.

30.     M&O LLC also participated in a voluntary recall of Buckyballs®. On May 27, 2010, the CPSC and M&O LLC jointly issued a press release announcing: "Buckyballs High Powered Magnet Sets Recalled by Maxfield and Oberton due to violation of Federal Toy Standard."

7

31.     That recall, mentioned in Paragraph 27 of this Complaint at Law, resulted in approximately only 50 units returned.

32.     At the time of the recall, M&O LLC and its owners were aware of multiple incidents of ingestion injuries to children. In addition, at or near the time of the recall, M&O LLC's owners had refused their staff's requests to stop the sale of Buckyballs and submit a corrective action plan for all of M&O LLC's rare earth magnet products.

33.     At the time of the recall, M&O LLC changed Buckyballs®'s warning in an attempt to remove it from the scope of the mandatory provisions of ASTM International F963-08, Standard Consumer Safety Specification for Toy Safety, prohibiting the sale of loose magnet toys to children.

34.     Upon information and belief, in November 2011, M&O LLC participated with the CPSC in a series of public service announcements to create public awareness for the dangers associated with the ingestion of rare earth magnets by children.

35.     Despite these efforts mentioned in Paragraph 31 of this Complaint, reported incidents of magnet ingestion by children increased from 13 in 2010, to 19 in 2011, and 52 in 2012, with the largest spike seen after Christmas 2011.

36.     Although M&O LLC changed its warning and cooperated in public service announcements, M&O LLC and its owners continued to market the product for use by children and/or age inappropriate consumers by comparing Buckyballs® to Erector Sets®, Hula-Hoops®, Silly Putty®, the Slinky®, and Lego®, thus rendering such warnings and labeling wholly ineffective.

37.    Regardless of the warnings placed on the Buckyballs® toy, reasonable consumers considered the industrial magnet toy a toy for young children.

38.    In May 2012, the CPSC Compliance staff contacted 13 importers of magnet sets asking that they provide reports required by Section 15 of the Consumer Product Safety Act. Most of the companies agreed to provide the requested information and voluntarily agreed to stop selling magnet sets pending an evaluation of the products by the CPSC. Importantly, M&O LLC and its owners did not agree to stop selling Buckyballs®.

39.    In July 2012, the CPSC contacted M&O LLC directly asking that it stop selling Buckyballs® and initiate a voluntary recall of its rare earth magnet products. M&O LLC and its owners did not agree to initiate a voluntary recall. M&O LLC and its owners did not agree to stop selling Buckyballs® or any of its rare earth magnet products.

40.    On July 25, 2012, the CPSC filed an Administrative Complaint against M&O LLC after its discussions with the company and its owners failed to result in a voluntary recall plan and/or termination of product sales. *See, In the Matter of Maxfield and Oberton Holdings, LLC*, CPSC Docket No. 12-1, United States of America Consumer Products Safety Commission. CPSC Complaint Counsel requested that the Commission reach a determination that M&O LLC's Buckyballs® and rare earth magnet products presented a "substantial product hazard within the meaning of 15 U.S.C. §2064(a)(2)." CPSC Complaint Counsel also requested that the Commission enter an Order pursuant to 15 U.S.C. §2064(c) (section 15(c) of the CPSA) requiring M&O LLC to "cease importation and distribution of the product [Buckyballs and Buckycubes]."

41.    On September 4, 2012, the CPSC published a Notice of Proposed Rulemaking ("NPR") in the federal register to address the unreasonable risk of injury associated with rare earth

magnet/neodymium based products, including Buckyballs. These risks include, but are not limited to, the following:

> Magnet sets have some appeal for virtually all age groups. These types of magnets tend to capture attention because they are shiny and reflect light. They are smooth, which gives the magnets a tactile appeal, and these magnets make soft snapping sounds as they are manipulated. These properties or characteristics of magnets are likely to seem magical to younger children and may evoke a degree of awe and amusement among older children and teens. These features are the foundation of the magnet sets' appeal…

> Children, from toddlers through teens, have been exposed to magnet sets in the home setting and elsewhere. As the NPR preamble notes, we have reports of ingestion incidents that involve children 5 years of age and younger. The reports reflect similar scenarios to other ingestion incidents among this age group because mouthing and ingesting non-food items is a normal part of preschool children's exploratory behavior. In a number of reported incidents, the not in their original containers, and care givers were unaware that some of the magnets from the set were missing and in the child's possession…

> Thus, it is foreseeable that some portion of these products will be purchased for elementary school children and teens. Moreover, given the relatively low cost for some magnet sets, elementary school children and teens may purchase the magnet sets themselves. The incident reports reflect behaviors that are beyond the intended use of the product but that are foreseeable for the groups using them. For example, it is foreseeable that some children will place these magnets in their mouth, even if the manufacturer warns against this behavior.[1]

42.    On December 27, 2012, M&O LLC filed or caused to be filed M&O LLC's Certificate of Cancellation with the Secretary of the State of Delaware.

43.    On September 24, 2014, the CPSC passed a consumer product safety standard banning the sale of rare earth magnet products in the United States. The standard, found at 16 C.F.R. § 1240, *et. seq.*, took effect on April 1, 2015.

---

[1] *See*, CPSC briefing packages for the proposed and final magnet set rule, available on CPSC's website at: www.cpsc.gov/PageFiles/128934/magnetstd.pdf (MPR briefing package); www.cpsc.gov/Global/Newsroom/FOIA/CommissionBriefingPackages/2014/SafetyStandardfor MagnetSets-FinalRule.pdf (Final Rule Briefing Package). *See also*, 77 F.R. 53781-01 (September 4, 2012).

## THE BROOKSTONE DEFENDANTS

44.     Upon information and belief, as early as 2009, Defendant, M&O LLC contracted with Defendant, BROOKSTONE STORES, INC., BROOKSTONE, INC. and/or Defendant, BROOKSTONE COMPANY, INC. to sell Buckyballs at their various locations throughout the United States, including the State of Illinois.

45.     In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE STORES, INC., conducted business throughout the State of Illinois, including in the Northern District of Illinois, through its various retail store locations.

46.     In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE, INC., conducted business throughout the State of Illinois, including in the Northern District of Illinois, through its various retail store locations.

47.     In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE COMPANY, INC., conducted business throughout the State of Illinois, including in the Northern District of Illinois, through its various retail store locations.

48.     In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE, INC., owned Defendant, BROOKSTONE COMPANY, INC.

49.     In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE, INC., operated Defendant, BROOKSTONE COMPANY, INC.

50.     In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE, INC., managed Defendant, BROOKSTONE COMPANY, INC.

51. In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE, INC., maintained Defendant, BROOKSTONE COMPANY, INC.

52. In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE, INC., controlled Defendant, BROOKSTONE COMPANY, INC.

53. In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE, INC., owned Defendant, BROOKSTONE STORES, INC.

54. In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE, INC., operated Defendant, BROOKSTONE STORES, INC.

55. In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE, INC., managed Defendant, BROOKSTONE STORES, INC.

56. In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE, INC., maintained Defendant, BROOKSTONE STORES, INC.

57. In December 2010, and at all times mentioned herein, Defendant, BROOKSTONE, INC., controlled Defendant, BROOKSTONE STORES, INC.

58. From October 2010 through December 2010, Defendants, BROOKSTONE COMPANY, INC. and/or BROOKSTONE STORES, INC. sold Buckyballs at their various retail store locations throughout the State of Illinois, including at a BROOKSTONE retail outlet located at the Algonquin Commons Shopping Center located at 1900 S. Randall Road, Algonquin, Illinois 60102.

59. In September 2015, and at all times mentioned herein, Defendants, BROOKSTONE, INC., BROOKSTONE STORES, INC. and/or BROOKSTONE COMPANY,

INC., conducted substantial business throughout the State of Illinois, including, but not limited to, the following locations:

a)  1650 Premium Outlet Blvd., Space #1163, Aurora, Illinois 60502

b)  10000 West O'Hare, Terminal 1, Gate C11, Chicago, Illinois 60666

c)  10000 West O'Hare, Terminal 3, Concourse Hk, Chicago, Illinois 60666

d)  9600 North Mannheim Rd., Terminal 5, Space #528, Chicago, Illinois 60666

e)  736 Orland Square Mall, Space G-10, Orland Park, Illinois 60462

f)  J-108 Woodfield Mall, Schaumburg, Illinois 60173

g)  1054 Northbrook Ct., Northbrook, Illinois 60062

## GW

60.     GW was born in 2013.

61.     On December 5, 2010, ASHLEY WILLIAMS (GW's mother) bought a set of Buckyballs at a BROOKSTONE retail outlet located at the Algonguin Commons Shopping Center located at 1900 S. Randall Rd., Algonquin, Illinois 60102.

62.     On December 5, 2010, the Buckyballs toys were purchased as a Christmas gift for MICHAEL WILLIAMS (GW's father and Ashley's husband).

63.     At the time of purchase, ASHLEY WILLIAMS did not recognize or understand, nor was she made aware of, the risk of severe gastrointestinal related injuries from swallowing Buckyballs magnets.

64.     From December 2010 through September 2015, and at all times mentioned herein, Plaintiffs, ASHLEY and MICHAEL WILLAIMS made a reasonable effort to keep the Buckyballs

13

magnets away from GW, storing them on top of their refrigerator and in their garage out of GW's reach.

65.     In September 2015, GW was twenty-three months old.

66.     On or about September 10, 2015, Plaintiff, ASHLEY WILLIAMS, noted that her son, GW, was showing flu-like symptoms and lethargy.

67.     On September 10, 2015, GW was vomiting.

68.     On September 11, 2015, at approximately 4:00 a.m., GW presented to the emergency room at La Porte Hospital, where a CT of the abdomen and pelvis with contrast revealed, "[m]etallic foreign body noted in the right lower quadrant, which appears to be two magnets attached to each other. One of the magnets is within the terminal ileum."

69.     On September 11, 2015, GW was transferred emergently via Life Flight to Riley's Children Hospital, with a diagnosis of "[i]ngestion of foreign body in pediatric patient; Perforation of colon; Sepsis".

70.     From September 11, 2015 through October 21, 2015, GW remained hospitalized at Riley's Children Hospital, where he underwent an intestinal repair with sutures to small and large intestine.

71.     From September 11, 2015 through October 21, 2015, GW underwent numerous other procedures to clean the wound, treat infection, insert catheters, and remove necrotic and infected tissue.

72.     After his release on October 21, 2015, GW was almost immediately readmitted to the hospital. Overall, GW was an inpatient at Riley Children's Hospital for over six-months.

73.     Before September 2015, GW was a healthy 23 month old boy before ingesting the Buckyballs magnets. As a result of ingesting the magnets, GW requires constant care from physicians, his father MICHAEL, and his mother ASHLEY.

## IV.     CAUSES OF ACTION

### COUNT I – STRICT PRODUCTS LIABILITY – BROOKSTONE, INC.

74.     Plaintiffs incorporate by reference all allegations contained in their Complaint at Law.

75.     On and before December 2010, Defendant M&O LLC was engaged in the design, manufacture, testing, inspection, assembly, installation and sale of Buckyballs magnets and their related component parts.

76.     On and before December 2010, Defendant, M&O LLC designed, manufactured, tested, inspected, assembled and sold Buckyballs magnets to Defendant, BROOKSTONE, INC., to be re-sold at their various retail locations, including those located throughout the State of Illinois, including at their location at 1900 S. Randall Rd., Algonquin, Illinois 60102.

77.     On December 27, 2012, M&O LLC filed or caused to be filed M&O LLC's Certificate of Cancellation with the Secretary of the State of Delaware. Upon information and belief, pursuant to M&O LLC's charter and other organizing documents, M&O LLC was organized, existed and/or dissolved pursuant to the Delaware General Corporation Laws, and remained amendable to suit for a period of three years ending on December 27, 2015.

78.     Upon information and belief, in December 2010, Defendant, BROOKSTONE, INC., had actual or constructive knowledge of the defective conditions pled in this Complaint at Law of the subject Buckyballs, at the time BROOKSTONE, INC supplied the product for sale.

79.     At the time the subject Buckyballs left the control of BROOKSTONE, INC., they were defective and unreasonably dangerous due to the inherent characteristics of the products to cause intestinal damage injuries in children of or near the same age as GW as a result of multiple Buckyballs being swallowed.

80.     On and before December 5, 2010, Defendant, BROOKSTONE, INC. had a duty to exercise ordinary care for the safety of others in the design, manufacture, testing, inspection, assembly, installation and sale of the aforementioned Buckyballs being sold at its retail locations, so as to ensure that said product was safe for use by Plaintiffs.

81.     On and before September 9, 2015, Defendant, BROOKSTONE, INC., was negligent in the design, manufacture, and sale of the aforementioned Buckyballs magnets, for one or more of the following reasons:

a) Sold Buckyballs magnets which were designed in such a manner that they were attractive to children and likely to be ingested;

b) Failed to appreciate the inherent danger that Buckyballs magnets posed to children;

c) Sold Buckyballs magnets which were of such a size that they could be ingested by children;

d) Failed to provide proper warnings to customers, owners and users, such as Plaintiffs, of the serious and life-threatening dangers posed by Buckyballs magnets;

e) Continued to sell Buckyballs magnets when it knew or reasonably should have known the dangers the magnets posed to children, such as GW;

f) Sold Buckyballs magnets from its retail locations that were negligently designed, manufactured, tested, inspected, and sold.

16

82.     As a proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff's minor, GW, sustained injuries of a personal, permanent, and pecuniary nature.

WHEREFORE, Plaintiffs, MICHAEL and ASHLEY WILLIAMS, on Behalf of their Minor Son, GW, demand judgment against Defendant, BROOKSTONE, INC., in an amount in excess of the jurisdictional limitation of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

### COUNT II – BROOKSTONE, INC. – FAMILY EXPENSE ACT

83.     Plaintiffs incorporate by reference all allegations contained in their Complaint at Law.

84.     As a direct and proximate result of the aforementioned negligent acts and/or omissions as delineated in Paragraph 72 of this Complaint at Law, Plaintiff's Minor, GW, sustained injuries of a personal, permanent, and pecuniary nature.

85.     As a direct and proximate result of the injuries sustained by Plaintiff's Minor, GW, his parents, MICHAEL and ASHLEY WILLIAMS became obligated for various medical expenses, which have been incurred, and which continue to be incurred, and they are entitled to recover said expenses and bring this claim pursuant to the Family Expense Act, 750 ILCS 65/15, and brings this action to recover said expenses.

WHEREFORE, Plaintiffs, MICHAEL and ASHLEY WILLIAMS, Individually, demand judgment against Defendant, BROOKSTONE, INC., in an amount in excess of the jurisdictional limitation of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

### COUNT III – STRICT PRODUCTS LIABILITY – BROOKSTONE COMPANY, INC.

17

86.     Plaintiffs incorporate by reference all allegations contained in their Complaint at Law.

87.     On and before December 2010, Defendant M&O LLC was engaged in the design, manufacture, testing, inspection, assembly, installation and sale of Buckyballs magnets and their related component parts.

88.     On and before December 2010, Defendant, M&O LLC designed, manufactured, tested, inspected, assembled and sold Buckyballs magnets to Defendant, BROOKSTONE COMPANY, INC., to be re-sold at their various retail locations, including those located throughout the State of Illinois, including at their location at 1900 S. Randall Rd., Algonquin, Illinois 60102.

89.     On December 27, 2012, M&O LLC filed or caused to be filed M&O LLC's Certificate of Cancellation with the Secretary of the State of Delaware. Upon information and belief, pursuant to M&O LLC's charter and other organizing documents, M&O LLC was organized, existed and/or dissolved pursuant to the Delaware General Corporation Laws, and remained amendable to suit for a period of three years ending on December 27, 2015.

90.     Upon information and belief, in December 2010, Defendant, BROOKSTONE COMPANY, INC., had actual or constructive knowledge of the defective conditions pled in this Complaint at Law of the subject Buckyballs, at the time BROOKSTONE COMPANY, INC supplied the product for sale.

91.     At the time the subject Buckyballs left the control of BROOKSTONE COMPANY, INC., they were defective and unreasonably dangerous due to the inherent characteristics of the products to cause intestinal damage injuries in children of or near the same age as GW as a result of multiple Buckyballs being swallowed.

92.     On and before December 5, 2010, Defendant, BROOKSTONE COMPANY, INC. had a duty to exercise ordinary care for the safety of others in the design, manufacture, testing, inspection, assembly, installation and sale of the aforementioned Buckyballs being sold at its retail locations, so as to ensure that said product was safe for use by Plaintiffs.

93.     On and before September 9, 2015, Defendant, BROOKSTONE COMPANY, INC., was negligent in the design, manufacture, and sale of the aforementioned Buckyballs magnets, for one or more of the following reasons:

a) Sold Buckyballs magnets which were designed in such a manner that they were attractive to children and likely to be ingested;

b) Failed to appreciate the inherent danger that Buckyballs magnets posed to children;

c) Sold Buckyballs magnets which were of such a size that they could be ingested by children;

d) Failed to provide proper warnings to customers, owners and users, such as Plaintiffs, of the serious and life-threatening dangers posed by Buckyballs magnets;

e) Continued to sell Buckyballs magnets when it knew or reasonably should have known the dangers the magnets posed to children, such as GW;

f) Sold Buckyballs magnets from its retail locations that were negligently designed, manufactured, tested, inspected, and sold.

94.     As a proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff's minor, GW, sustained injuries of a personal, permanent, and pecuniary nature.

WHEREFORE, Plaintiffs, MICHAEL and ASHLEY WILLIAMS, on Behalf of their Minor Son, GW, demand judgment against Defendant, BROOKSTONE COMPANY, INC., in an amount in excess of the jurisdictional limitation of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

## COUNT IV – BROOKSTONE COMPANY, INC. – FAMILY EXPENSE ACT

95.     Plaintiffs incorporate by reference all allegations contained in their Complaint at Law.

96.     As a direct and proximate result of the aforementioned negligent acts and/or omissions as delineated in Paragraph 84 of this Complaint at Law, Plaintiff's Minor, GW, sustained injuries of a personal, permanent, and pecuniary nature.

97.     As a direct and proximate result of the injuries sustained by Plaintiff's Minor, GW, his parents, MICHAEL and ASHLEY WILLIAMS became obligated for various medical expenses, which have been incurred, and which continue to be incurred, and they are entitled to recover said expenses and bring this claim pursuant to the Family Expense Act, 750 ILCS 65/15, and brings this action to recover said expenses.

WHEREFORE, Plaintiffs, MICHAEL and ASHLEY WILLIAMS, Individually, demand judgment against Defendant, BROOKSTONE COMPANY, INC., in an amount in excess of the jurisdictional limitation of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

## COUNT V – STRICT PRODUCTS LIABILITY – BROOKSTONE STORES, INC.

98.     Plaintiffs incorporate by reference all allegations contained in their Complaint at Law.

99.     On and before December 2010, Defendant M&O LLC was engaged in the design, manufacture, testing, inspection, assembly, installation and sale of Buckyballs magnets and their related component parts.

100.     On and before December 2010, Defendant, M&O LLC designed, manufactured, tested, inspected, assembled and sold Buckyballs magnets to Defendant, BROOKSTONE STORES, INC., to be re-sold at their various retail locations, including those located throughout the State of Illinois, including at their location at 1900 S. Randall Rd., Algonquin, Illinois 60102.

101.     On December 27, 2012, M&O LLC filed or caused to be filed M&O LLC's Certificate of Cancellation with the Secretary of the State of Delaware. Upon information and belief, pursuant to M&O LLC's charter and other organizing documents, M&O LLC was organized, existed and/or dissolved pursuant to the Delaware General Corporation Laws, and remained amendable to suit for a period of three years ending on December 27, 2015.

102.     Upon information and belief, in December 2010, Defendant, BROOKSTONE STORES, INC., had actual or constructive knowledge of the defective conditions pled in this Complaint at Law of the subject Buckyballs, at the time BROOKSTONE STORES, INC supplied the product for sale.

103.     At the time the subject Buckyballs left the control of BROOKSTONE STORES, INC., they were defective and unreasonably dangerous due to the inherent characteristics of the products to cause intestinal damage injuries in children of or near the same age as GW as a result of multiple Buckyballs being swallowed.

104.     On and before December 5, 2010, Defendant, BROOKSTONE STORES, INC. had a duty to exercise ordinary care for the safety of others in the design, manufacture, testing, inspection, assembly, installation and sale of the aforementioned Buckyballs being sold at its retail locations, so as to ensure that said product was safe for use by Plaintiffs.

105.    On and before September 9, 2015, Defendant, BROOKSTONE STORES, INC., was negligent in the design, manufacture, and sale of the aforementioned Buckyballs magnets, for one or more of the following reasons:

a)  Sold Buckyballs magnets which were designed in such a manner that they were attractive to children and likely to be ingested;

b)  Failed to appreciate the inherent danger that Buckyballs magnets posed to children;

c)  Sold Buckyballs magnets which were of such a size that they could be ingested by children;

d)  Failed to provide proper warnings to customers, owners and users, such as Plaintiffs, of the serious and life-threatening dangers posed by Buckyballs magnets;

e)  Continued to sell Buckyballs magnets when it knew or reasonably should have known the dangers the magnets posed to children, such as GW;

f)  Sold Buckyballs magnets from its retail locations that were negligently designed, manufactured, tested, inspected, and sold.

106.    As a proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff's minor, GW, sustained injuries of a personal, permanent, and pecuniary nature.

WHEREFORE, Plaintiffs, MICHAEL and ASHLEY WILLIAMS, on Behalf of their Minor Son, GW, demand judgment against Defendant, BROOKSTONE STORES, INC., in an amount in excess of the jurisdictional limitation of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

### COUNT VI – BROOKSTONE STORES, INC. – FAMILY EXPENSE ACT

107.    Plaintiffs incorporate by reference all allegations contained in their Complaint at Law.

22

108.    As a direct and proximate result of the aforementioned negligent acts and/or omissions as delineated in Paragraph 84 of this Complaint at Law, Plaintiff's Minor, GW, sustained injuries of a personal, permanent, and pecuniary nature.

109.    As a direct and proximate result of the injuries sustained by Plaintiff's Minor, GW, his parents, MICHAEL and ASHLEY WILLIAMS became obligated for various medical expenses, which have been incurred, and which continue to be incurred, and they are entitled to recover said expenses and bring this claim pursuant to the Family Expense Act, 750 ILCS 65/15, and brings this action to recover said expenses.

WHEREFORE, Plaintiffs, MICHAEL and ASHLEY WILLIAMS, Individually, demand judgment against Defendant, BROOKSTONE STORES, INC., in an amount in excess of the jurisdictional limitation of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

## COUNT VII – STRICT LIABILITY – MAXFIELD & OBERTON HOLDINGS, LLC

110.    Plaintiffs incorporate by reference all allegations contained in their Complaint at Law.

111.    M&O LLC was in the business of designing, testing, manufacturing, marketing, distributing and/or selling Buckyballs, including the Buckyballs that seriously injured Plaintiff's minor, GW, within the meaning of the Illinois Product's Liability Statute, 735 ILCS 5/2-2101, *et. seq.*

112.    At the time the subject Buckyballs left the control of M&O, LLC, they were defective and unreasonably dangerous due to the inherent characteristics of the products to cause intestinal damage injuries in children of or near the same age as GW as a result of multiple Buckyballs being swallowed.

23

113.    At the time the subject Buckyballs left the control of Defendant, M&O LLC, it knew or in light of reasonably available information should have known about severe gastrointestinal pinching, perforating and puncturing injuries that could occur in children of or near the age of Plaintiff's Minor, GW, as a result of multiple magnets being swallowed.

114.    At all times mentioned herein, Defendant, M&O LLC, had a duty to exercise ordinary care for the safety of others in the design, manufacture, testing, inspection, assembly, installation and sale of the aforementioned Buckyballs rare earth magnets so as to ensure that said product was safe for use by Plaintiffs and their Minor.

115.    On and before December 5, 2010, Defendant M&O LLC, was negligent in the design, manufacture, testing, inspection, assembly, installation, and sale of the aforementioned Buckyballs rare earth magnets, for one or more of the following reasons:

a)  The Buckyballs rare earth magnets were designed in such a manner that they were easily ingestible by children;

b)  The Buckyballs rare earth magnets were designed in such a manner that they were attractive to children;

c)  The Buckyballs rare earth magnets were manufactured in such a manner that they were easily ingestible by children;

d)  The Buckyballs rare earth magnets were manufactured in such a manner that they were attractive to children;

e)  Continued to sell and distribute Buckyballs in a defective or dangerous condition when the company knew or reasonably should have known that the product had caused injury to minor children; and/or

f)  Failed to provide proper warnings to customers, owners and users that said Buckyballs posed a serious and life-threatening danger to children.

116.    As a proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff's minor, GW, sustained injuries of a personal, permanent, and pecuniary nature.

WHEREFORE, Plaintiffs, MICHAEL and ASHLEY WILLIAMS, on Behalf of their Minor Son, GW, demand judgment against Defendant, MAXFIELD & OBERTON HOLDINGS, LLC, in an amount in excess of the jurisdictional limitation of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

### COUNT VIII – MAXFIELD AND OBERSTON HOLDINGS, LLC – FAMILY EXPENSE ACT

117.    Plaintiffs incorporate by reference all allegations contained in their Complaint at Law.

118.    As a direct and proximate result of the aforementioned negligent acts and/or omissions as delineated in Paragraph 94 of this Complaint at Law, Plaintiff's Minor, GW, sustained injuries of a personal, permanent, and pecuniary nature.

119.    As a direct and proximate result of the injuries sustained by Plaintiff's Minor, GW, his parents, MICHAEL and ASHLEY WILLIAMS became obligated for various medical expenses, which have been incurred, and which continue to be incurred, and they are entitled to recover said expenses and bring this claim pursuant to the Family Expense Act, 750 ILCS 65/15, and brings this action to recover said expenses.

WHEREFORE, Plaintiffs, MICHAEL and ASHLEY WILLIAMS, Individually, demand judgment against Defendant, MAXFIELD & OBERTON HOLDINGS, LLC, in an amount in excess of the jurisdictional limitation of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury.

Respectfully Submitted,

\_\_\_\_/s/ Charles R. Haskins_____
Attorney for Plaintiff

Bradley M. Cosgrove
Charles R. Haskins
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle St., Suite 3100
Chicago, Illinois 60602
(312) 899-9090
BMC@cliffordlaw.com
CRH@cliffordlaw.com

Yuri M. Ter-Sarkissov
TER-SARKISOV LAW, LLC
111 W. Washington St., Suite 1500
Chicago, Illinois 60602
(312) 522-1691
YMT@tersarkisovlaw.com
#6301022